You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. My name is Christina Hellman, and I represent the petitioner Truett Watts. I plan to reserve approximately two minutes of my time for rebuttal this morning. This morning I'm going to focus on two main points in the case. First, the evidence in this record that supports the defense of extreme emotional disturbance, or, as it's commonly referred to, the EED defense, thereby demonstrating counsel's ineffective representation. And second, the unreasonableness of the post-conviction court's denial of relief. When considering the record on the EED evidence, it's helpful to keep in mind the elements that Mr. Watts would have had to demonstrate to the court. And the two that are critically important here are the first, that he was under an extreme emotional disturbance, and the third, that that disturbance was reasonable. Evidence of the emotional disturbance was presented at trial. That was for an entirely different basis at trial. I'm trying to figure out how your claim has been exhausted. You're presenting a whole different basis here on appeal for the emotional, extreme emotional disturbance, correct? Your Honor, I respectfully disagree that it's been a whole different basis on appeal. Although there was emphasis in the post-conviction court on Mr. Watts's mental illness and the emphasis at trial was on the mental illness, the schizophrenia, and then the insanity defense, I have two responses to that. First, in Oregon, that evidence that was there could also have been used by the jury, had the defense been presented, to consider extreme emotional disturbance. And second ---- Am I understanding correctly, your basis now on appeal for the argument that supporting your assertion that extreme emotional disturbance should have been allowed or pursued by the trial counsel is entirely different than what you're presenting now? Is there any evidence in the record that Mr. Wilkins was actually sexually ---- sexually abused Mr. Watts? Is there any evidence in the record? The evidence that we have in the record is the testimony or the statements of friends and family members of their belief in the sexual abuse. It may have occurred. But it may have occurred, yes. And you didn't argue that at the trial court. When, your Honor, when you say the trial court, do you mean the criminal trial or the criminal or the post-conviction court?  Well, no, it was not argued at the criminal trial because counsel failed to present the extreme emotional disturbance and evidence of sexual abuse was irrelevant to an insanity defense, which he did raise. And if I may, your Honor, in the post-conviction court, the attorney specifically called the court's attention to Exhibit 20. And if you look at page ---- excerpt of record page 111, she specifically highlights Exhibit 20. Who, who she, who, who? The, Mr. Watts' post-conviction attorney. Okay. She tells the court, please look at Exhibit 20. And Exhibit 20 is the notes of the trial investigator. Those notes are what we relied on in this court. Well, but it seems that we have a report from the trial investigator with a few people saying that there was a rumor going around, if that's what you're referring to. Isn't that proper characterization of the record? I would disagree, Your Honor, that it's a, it was a rumor. It was their belief based on their interactions with somebody that they had known for a long time. But there was no, their belief, there's no, no evidence in the record other than their speculation that this might have occurred. It might have occurred. Isn't that correct? That it, that's correct, Your Honor, that it might have occurred. And then there was also a woman, Rennie Steinbrand, who testified that she believed, excuse me, she did not testify, she told the trial investigator that she believed the victim was a pedophile because she knew that he had assaulted another young boy and had made similar threats to this young boy. That's all based on belief. There's no evidence of that. I guess if that's what you're pointing to of the evidence at the trial court, what evidence or where, where do you have that you presented this at the, at the State court post-conviction? Your Honor, then I must have misspoke. When I referred to Exhibit 1, excuse me, Excerpt of Record 111, that is the post-conviction court's hearing, that's where the trial, that's where the counsel. So there was nothing at the trial court? There's nothing at the trial court, Your Honor, but again, I would argue that that demonstrates counsel's ineffective representation. The reason that it's not fully developed at trial is because counsel never raised this defense. How do we know it's not a trial strategy or tactic to focus the E.E. defense on the factual predicate that arises from the claim, you know, the mental illness showing, as opposed to this other factual predicate that you're arguing now? First, we have no affidavit or any evidence from trial counsel about a strategy in this record. The State never sought or obtained an affidavit from him in post-conviction. Second, if it is a strategy, if you assume it's a strategy, it's not a reasonable one for the reasons we argued in the brief, that these defenses are complementary. The E.E.D. defense allows a jury to return a manslaughter verdict even if they find an intentional murder. And given Mr. Watts' statements to the investigating officers, that was quite likely to happen. Right. What is your response, counsel, to opposing the opposing party's argument that this defense can't be based on the factual predicate that you're offering now? I mean, as a matter of law, not as a matter of fact. I agree that it can't be solely based on his schizophrenia. And it's our position that it was that in the post-conviction case before the State Oregon law allows somebody to be both insane, acting under the influence of schizophrenia, and emotionally disturbed at the same time. And so both of those, your mental illness could work with your emotional disturbance to cause and support the defense of extreme emotional disturbance. But a mental illness can't. Right. Solely, alone, itself. That's correct. Is that part of your argument? Your Honor, I'm not sure I'm understanding your question. That there was ineffective assistance, counsel, for asserting a defense that as a matter of law doesn't fly? No, because he did the defense he did assert, insanity, can be based on the schizophrenia and the psychotic action. So at this point, your argument is that the EED defense should have been raised also, that it was complementary. Exactly. Exactly. But at this point, you're just asserting that you think that we can see that in the trial record from under this other factual predicate solely by looking at excerpt of record 111. Excerpt of record 111, which refers to the trial counsel, the trial investigator's notes, yes. Is there any other place in the trial record or the PCR record where we could see that? Before I answer, I think. Sure. Take your time. No, your Honor, not specifically. However, as argued in the opening brief, the evidence that was presented at trial could have been used by the jury to consider the extreme emotional disturbance defense. So all the evidence that the jury heard about Mr. Watts being withdrawn, depressed, tearful, acting differently, being scared, acting scared of Mr. Wilkins, that all could have been, the jury could have considered that in terms of the emotional disturbance. One other brief point I would like to highlight for this Court is that should you conclude the record is not sufficiently developed, another appropriate disposition of this case would be a remand to the district court for that factual development for two reasons. First, Mr. Watts did not have counsel in the district court. He asked. He was denied. He was the case was disposed of before he even had the opportunity to submit a brief in his own defense. And as we argued, and I believe we have demonstrated, the post-conviction court's decision was unreasonable, thereby allowing Mr. Watts to proceed without any AEDPA deference and without the limitations on factual development that come from that AEDPA deference. So if this Court is inclined to find this record insufficient, which we believe it is not, that is the relief we would ask for. And I'll reserve my remaining time if there are no more questions. Thank you. May it please the Court, Counsel, Jeremy Rice on behalf of the defendant, the State. I did want to ask a question. At the district court level, what was the EED defense based on? Schizophrenia? The same as the State post-conviction court. That is, Petitioner didn't elaborate or specify. He merely said, my attorney was inadequate for failing to raise an extreme emotional disturbance defense. It would be, my theory is the same as presented to the State post-conviction court. So you have to look back to the State post-conviction court, which was essentially mental illness, paranoid schizophrenia, which led the Petitioner to believe that the victim was, in his words, they hired a high-paid hitman who had been paid to kill his parents. Is this the first time this new, what I'm going to call a new factual predicate, has been argued? It is. And I did want to just point out before getting into the merit or into what I had prepared for my argument, an answer to one of the Court's first questions was simply about whether there is or is not evidence in the record, direct evidence to whether Petitioner in fact was or was not sexually abused by the victim. I would point the Court to Excerpt of Record ER-64. It's a psychological evaluation done at the request of Petitioner's public defender to determine whether he was capable of aiding and assisting in his own defense. Petitioner in that evaluation denied ever having been sexually abused. He denied ever having had any inappropriate contact with the victim prior to that day. And a rough paraphrase, he said, the victim was just some guy who was living on my parents' property. Petitioner, consistently in that evaluation at least, said that the only reason for the attack that day, for the assault that day, was that he believed irrationally that the victim was a hired hitman. He specifically said there were voices in his head telling him that the victim was a hired hitman. I'm not sure I know all the or I'm not sure I'm familiar enough with the record to know the exact details of who was living where. Well, that's part of your job.     The victim was a hired hitman. The victim was a hired hitman. The other part of the record is that the parents lived on a piece of property. Somewhere on that piece of property is my understanding. The victim was camping out with the permission of the parents. Petitioner, I believe, was also living with his parents and was for some reason that day following. There were several people there on the property that day having dinner, I believe. And Petitioner was sort of following the victim around with a knife and apparently a barbecue fork that day. This is what precipitates the attack. But before that, wasn't the defendant, Petitioner, going into the tent? I don't believe so. I think there may have been some information suggesting that he had been using methamphetamine with the victim, but I'm not sure how corroborated that was. Is there a place in the record where it indicates, I think on a different day that the defendant's father saw the victim and the defendant in the tent using methamphetamine? I think there's a suggestion that they were using methamphetamine together, if that's what you're getting at. Yeah. I think there is a – I think there's an indication in the record that someone suggested they had seen the Petitioner and the victim using methamphetamine together prior to the day of the attack. Yeah. I think that's correct. Where were they? Sorry? Where were they? I think they were on the property that day. Was there a tent on the property? That I'm not sure. Did the victim live or camped out? I believe so. I believe the tent had been there for some time. I apologize. I don't know exactly how long. Ultimately, I'm not sure that – I think that fact probably played into the prosecution's case. That is, the prosecution was – the entire case was premised on the idea that Petitioner was, in fact, not insane. That is, Petitioner's defense at trial was an insanity defense. The State said, well, he's not insane. He had known these people. He was on the property. He had deliberately followed this person around and arguably, you know, and then eventually attacked him, and that whatever was going on in his mind, it may have provoked a very unreasonable behavior, but it wasn't sufficient to qualify under Oregon's definition of the insanity defense. So there are a lot of background facts that are presented at the trial. I'm not sure how important they are for assessing Petitioner's current claim, which is simply that his attorney – the claim, at least, is that his attorney should have argued – now, at least, Petitioner argues that his attorney should have argued that Petitioner had been sexually abused by the victim. And opposing – your colleague in opposing counsel asserts that they – Mr. Watts fairly asserted and presented this claim below in State court, and they cite a case of Robinson v. Shero. Can you distinguish Robinson for me? I don't think Robinson is exactly on point. Robinson is a case where this Court said that a Petitioner had elaborated on his arguments that were presented in the State post-conviction court. And I have – I have Robinson here with me. What the Court said in Robinson was that Mr. Robinson was not required to present his arguments in the same amount of detail to the two courts in support of a Federal constitutional claim. What the Court goes on to say is that what he is required to do is to present the legal theory, the Federal legal theory, and the factual basis for the claim, and goes on to explain that the Petitioner in that case had presented both the legal theory and the factual basis for the claim. Our argument – to the extent that our argument in this case is based on a sort of failure to fairly adjudicate the case in State court, it is premised really on this idea that he failed to present the factual basis of the claim to the State court. Specifically, the factual basis presented to the State court was, one, focused on paranoid schizophrenia, and that that ultimately constitutes an extreme emotional disturbance and a defense that should have been raised. The factual basis of the claim now is focused on alleged sexual abuse. Ultimately, however, all of those arguments that Petitioner is making are really attempts to avoid the standards set forth in the EDPA, in the Death Penalty Act, which is to defer to the State court's adjudication. The State court resolved the claim that was presented to it. It resolved it on grounds that are not unreasonable, certainly not unreasonable, in that the State court applied the Strickland v. Washington standard, determined that Petitioner's attorney was not unreasonable for failing to raise this extreme emotional disturbance defense, and determined that even if counsel had raised an extreme emotional disturbance defense, it would not have affected the outcome of the underlying criminal trial, or not likely. We can look at the record in this case and compare it to Oregon law and see what evidence we have. But if you have a jury trial, how can you tell or predict or looking back say it wouldn't have made any difference? The standard is reasonable probability. Tell me, am I wrong about this? I have in my notes here that Wilkins camped in the yard of an adjacent home. He lived in a tent. He did odd jobs. I believe that's correct. And he was there for some time, wasn't he? I believe that's correct, yes. And he and this Watts had a relationship. They appear to know each other somehow. Well, they were taking drugs together. Potentially, yes. What? Potentially. I'm not sure. I mean, I know there's evidence of that, but I don't know that that factual finding was ever determined in Petitioner's favor or, you know, the State Post-Conviction Court didn't resolve those issues. They weren't really necessary for resolving the case. But there was testimony to that. There's testimony to that effect, yes. Yes. And there's testimony to the effect that some of this took place in a tent on the property, the adjacent property. Sexual abuse took place in the tent? That relationship took place. Oh, yes, that they knew each other in the tent, yes. They were in a tent together. I believe that's true, yes. They were taking, doing drugs. Yes. And how old was this young man, Watts? Watts was 17 or 18, I believe. And how old was the other guy? I don't recall older than that, though. Much older than that. Yes. Huh? And what the evidence, what the record lacks, and the reason why the State court's reasonable application of Strickland is that there is no evidence in the records proving, by preponderance of the evidence, that there is a reasonable probability that alleging sexual abuse would have affected the outcome of the trial. There needs to be something in the evidence showing for. How do we know that? Oh, there's just no evidence in the record saying that he was sexually abused by this person. Counsel, I just. As far as I could tell, there's some inference of that. Respectfully, I disagree. I see my red lights on. If you'd like me to explore that a little more, I'm happy to. We won't give you a traffic ticket. I appreciate it. Essentially, although there could be some speculation, and I think that's what the record has, is some speculation from a few people that perhaps this person had been sexually abused, what the record lacks is any evidence that it actually happened. And what the record actually does contain is evidence from Petitioner in the State court saying that it did not happen. Counsel, let's say it did. Let's say that there's, there were, had there been evidence that rises to the level that I think Judge Pregerson is suggesting, where there is a hypothetical, perhaps stronger evidence that the sexual abuse had occurred. My question really goes to Oregon law, if you could help me out. Am I correct in understanding that had this defense been raised in a timely manner, in order to be successful, the jury would have had to find that the defendant responded as a reasonable person, would have responded to this extreme emotional disturbance? It's less that he had to have responded as a reasonable person would respond. It is Oregon law, Oregon law, and there's a case in Oregon called Counts, which is cited throughout the brief state versus counts from the Oregon Supreme Court that explains our extreme emotional disturbance doctrine. Essentially, that there's some triggering event, there's some event, and a reasonable person would be extremely emotionally disturbed by that. By that event. By that event. So the jury would have had to find that a reasonable person would have been extremely emotionally disturbed by this sexual abuse. That's what they would have had to find? By seeing the sexual abuser on the property or whatever exactly it is. I've never been, to be perfectly honest, I'm not 100 percent sure what Petitioner's theory is of the triggering event. Whether it is that he was sexually abused at some point in the past, maybe it was that he was sexually abused and then this abuser was having dinner with his family. It's arguably in the briefing, it is that he was sexually abused and believed that the abuser was going to hurt his family. Something like that, the Oregon doctrine would say that a reasonable person, not an insane person, not a person suffering from schizophrenia, would have been extremely emotionally disturbed by that event. What the record lacks, and again, it's Petitioner's burden to prove his claim, is really any detail from which a fact finder, namely the State Post-Conviction Court, which was responsible for finding these facts. There was a social event going on at the home. Yes. And what he did was he went to the victim and stabbed him with a knife. Yes. Right in the chest. With witnesses. With witnesses. Yes. That's kind of crazy. And I think that's why his attorney raised an insanity defense. I think that his attorney was perfectly reasonable in choosing an insanity defense that it appeared would, to his attorney, would work. That's the defense they chose. They looked, they had him evaluated. Dr. Sukow testified and also provided an evaluation for the defense and said he believed that the Petitioner's actions and conduct were the result of paranoid schizophrenia, voices in his head telling him to do something that he would otherwise not have done. That, if believed by the fact finder, would have qualified as an insanity defense, which would lead to guilty but for insanity. Well, Oregon has that liberal insanity defense. It is. It's governed by statute. It is essentially the standard is that because of a mental defect that the defendant is unable to conform his conduct to the law. With the District of Columbia Circuit Court. Excuse me? That originated with the District of Columbia Circuit Court. Oh. And, yeah, and it's made its way into Oregon statute now, and it's governed by Oregon statute now, but I agree. It's the old standard of a mental defect that makes the person unable to conform their conduct to law or to appreciate the criminality of their conduct. Well, that's not an old standard. That standard came into play in the Ninth Circuit in about 1970. It's not so old. And I think shortly after that is when Oregon enacted its criminal code. It was done by Judge Bazelon. Okay. He ruled this because his granddaughter was one of my law clerks. There you go. You definitely know it. I'm only really familiar with the statute, and I have read the cases in our jurisdiction interpreting the statute. I believe, for whatever it's worth, that had the jury factually believed Petitioner's defense in this case, that it would have been a successful defense. That is, had the jury believed that his conduct was motivated by voices in his head and paranoid schizophrenia, it would have resulted in a guilty but for insanity finding. Petitioner's claim now, of course, is that his attorney should have, in addition to that, said, even if I wasn't insane, I was sexually abused, and I saw my abuser, it made me extremely emotionally disturbed, which Oregon law, the Oregon Supreme Court and counts explains this, distinguishes between an emotional response and a mental defect. There's a difference between these two things. Ultimately, what our State post-conviction court said was extreme emotional disturbance was not available on these facts. And this Court's review under the AEDPA standard is simply to look and see whether the State court unreasonably applied the Strickland standard, and our position is that in this case it did not. In addition, we would simply point out that the record does not support this claim. There isn't sufficient evidence to show by preponderance of the evidence that there is a reasonable probability that this defense would have affected the outcome. And as the Court is aware from the briefing, we also believe this claim was not fairly presented to the State court. If the Court has further questions, I'm happy to try to answer them. Otherwise, I believe that's all I have. Thank you. Counsel, may I jump in with my question? I know you probably have prepared remarks, but I have the elements here for this extreme emotional distress, and I understand it to be a crime committed under the knowing reckless or criminally negligent act, and there must be a reasonable explanation for the disturbance. So can you tell me, going back to opposing counsel's point about the theory, what exactly was the precipitating event that should have been argued by trial counsel? That the Mr. Watts was sexually abused, that he tried to have Mr. Wilkins leave the property, and Mr. Wilkins returned. And it was the return and the reinsertion of Wilkins into Mr. Watts' life that triggered Seeing him. Seeing him, having him there, having him back. It's not part of this notion that, or it's truly a question on my part, not part of the notion that he thought that the victim was going to kill his parents? It is also that, as well, the return of Mr. Wilkins, the record suggests, also triggered those thoughts. Yes, there is evidence about those thoughts being triggered by schizophrenia, but the idea that this person whom you believed was trying to kill your parents and you, you've told them to leave, now they're back in your life, that the return was a in context of all of the other facts. The one, if I may, the one brief point I wanted to make was that there is a fundamental disagreement here about what is evidence, and it is the State's position that because we have produced no direct evidence of sexual abuse, that this claim cannot stand. But there are two kinds of evidence you can produce in a trial. Direct evidence, testimony of someone who witnessed the abuse, testimony of the abused person. I didn't know that. So what is the evidence? And the circumstantial evidence of the abuse is, as Your Honor pointed out, Mr. Wilkins lived on the property. He lived in a tent. Mr. Watts, my client, would visit him in that tent. Mr. Watts was afraid of Mr. Wilkins. People believed that Mr. Watts was acting differently, and they believed or thought or supposed that part of that reason was there may have been sexual abuse. On those facts, a jury would have been entitled. What did Watts' father tell Watts? Several things, and including that Mr. Watts' father had asked Mr. Wilkins to stop using drugs with Mr. Watts because he was worried about what was going on. And so this was going on in a tent? Yes. My read of the record indicates that when and to the extent that Watts and Wilkins were using methamphetamine together, it took place in the tent. And the father found them. The father found them there. Caught them. That's true, yes. And so in conclusion, the jury would have been entitled to conclude from that evidence that that circumstantial evidence that the abuse did take place and that the return in conjunction with the abuse, in conjunction with everything else, was a triggering event that a reasonable, maybe not to us, but a reasonable reaction, and find the EED defense. I think there's circumstantial evidence, but what you just said is what's bothering me most. If you get past EDPA, if you get past this double deference for Strickland, which is, you know, these are big hurdles as you appreciate. But under Oregon law, the reasonable, this third element, the reasonable explanation, does that encompass a reasonable reaction? Is the notion that a reasonable person could react this way to that circumstance? Oregon law is a little bit tricky because it's not a reasonable person like we all learned about in law school, just a generic reasonable person. It's a reasonable person in the circumstances of the actor. And so it's more nuanced than just, you know, if you stopped someone on the street and said, would this be reasonable for you to come in and stab a man at your dining room table, which no one would say yes. You're looking at, actually, was it reasonable for Watts to respond in that way? And reasonableness, as I understand it, is, what am I trying to say, in his own terms, is reasonable. So I think it's a very broad notion, and I think it's important for all of the facts that were there. So. Kagan. So a subjective view, not an object view. Exactly. Yes. It's a much more succinct way of putting it. Thank you, counsel. Thank you very much. If there are no further questions.
judges: Pregerson, Murguia, Christen